UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

BRIAN KELLY,                                       Case No. 03-87094-511

                               Debtor.             Chapter 7
----------------------------------------------------------------X
MOUNTBATTEN SURETY COMPANY,
INC.,                                              Adv. Proc. No. 04-8038-511

                               Plaintiff,

        -against-

BRIAN KELLY,

                               Defendant.
----------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
### (RE:  MOTION OF DEFENDANT KELLY FOR SUMMARY JUDGMENT)


        Before the Court is the motion of Brian Kelly (the "Debtor" or
"Defendant") for summary judgment in an adversary proceeding to except from
discharge, pursuant to § 523(a)(4) of the Bankruptcy Code, a debt arising from a
contract to indemnify the issuer of surety bonds on a construction project that the
Debtor's construction company failed to complete.   Mountbatten Surety
Company, Inc. ("Mountbatten" or "Plaintiff") has filed opposition to the motion
stating it requires additional discovery in order to oppose the summary judgment
motion.  As set forth below, Mountbatten's request for discovery will be allowed,

albeit on a limited basis, and the Court will deny Plaintiff's motion without prejudice to renew after discovery is completed.

**Background**

        The Debtor is the president, sole shareholder and officer of National Lath & Plaster, Inc. ("National Lath"), a construction contractor.    In 1998, Mountbatten issued surety bonds on behalf of National Lath while it was a sub-contractor for a project at the American Museum of Natural History that began in October or November of 1998 (the "Museum Project").   The Debtor signed an indemnity agreement whereby he personally guaranteed repayment to Mountbatten on any amounts it had to pay out on the bonds.

        From March 1999 through September 2000, the Debtor was incarcerated as a result of being convicted of criminally violating federal environmental laws on work unrelated to the Museum Project.  During the time of the Debtor's incarceration, National Lath continued its work on the Museum Project.   In the Debtor's absence, the company was run by Doug Schwartz ("Schwartz"), an employee, with the assistance of Larry Kelly, the Debtor's father. The pleadings allege that the  Debtor communicated with both Schwartz and his father while incarcerated, but the record is not clear as to the frequency or extent of the contact.  Thus, it is unclear what role, if any, the Debtor played with regard

to the operations, management and billing practices of National Lath while incarcerated.   The Debtor contends that he played no role and had no responsibilities.  National Lath disagrees and urges that, to the contrary, the Debtor maintained an active participation in the business affairs of the company.

National Lath defaulted on payments to suppliers and laborers of the Museum Project, triggering Mountbatten's liability on the surety bonds. Mountbatten took over financial management of National Lath upon the default, approximately in mid-September 1999 (while the Debtor was in prison), and also caused the general contractor, Morse Diesel, to make payments directly to Mountbatten's agent, HMS Dreadnought, Inc.

Mountbatten paid $370,821.23 in excess of what it received from Morse Diesel and sued in state court to recover from the Debtor, National Lath and other parties to the indemnification agreement.  In June 2003, the state court granted Mountbatten summary judgment and in September 2003, signed and entered a judgment in the amount of $584,860.17, representing the principal amount owed plus interest and attorney's fees.   As a result of the judgment obtained by Mountbatten, the Debtor sought relief under Chapter 7 of the Bankruptcy Code on October 30, 2003.

**The Instant Adversary Proceeding**

        The indemnification agreement provides for the creation of an express trust, the *res* comprised of the funds received by National Lath on account of the Museum Project; the funds were to be held for the specific purpose of paying suppliers and laborers for the project. Mountbatten is designated as a beneficiary of the trust. Mountbatten alleges trust funds were impermissibly used to pay general operating expenses of National Lath (other than payroll taxes), and that the Debtor as president of National Lath was responsible for any diversion of trust funds. Mountbatten thus commenced this adversary proceeding on January 30, 2004, to except from discharge the debtor's debt on the basis of the breach or defalcation of the Debtor's fiduciary duty to use funds received by National Lath only for those purposes specified in the indemnity agreement. Mountbatten also seeks a determination that the amount of the non-dischargeable debt is $581,744.64, plus attorney fees and interest from August 11, 2003.

        Following commencement of the adversary proceeding, the parties engaged in motion practice, including a motion by Plaintiff to file an amended complaint which was subsequently approved by the Court by Order dated May 3, 2004. On May 14, 2004, Defendant simultaneously filed an Amended Answer and a Summary Judgment Motion.

**Defendant's Summary Judgment Motion**

The Debtor has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (as made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure), requesting the complaint be dismissed entirely and the debt be declared dischargeable, or alternatively, the debt be excepted from discharge only to the extent Mountbatten can show the Debtor personally received "office and supervision" compensation out of the funds paid to National Lath to be held in trust.

The Debtor argues the only fact alleged by Mountbatten which, if proven, could support a finding of nondischargeability is that trust funds were used to pay general operating expenses of National Lath, not including payroll taxes. According to the Debtor, Mountbatten seeks to prove this allegation by relying upon a "Schedule of Manpower" for the Museum Project that includes, for each of the four weeks from November 27, 1999 to December 18, 1999, the allotment of ten hours of compensable work under the heading of "office and supervision." The Debtor argues that because this was during the time he was in prison, it is not possible for him to have participated in the alleged defalcation. He also argues that he had no knowledge of the diversion of the trust funds. In any event, the Debtor points out the "Schedule of Manpower" was sent with a cover letter expressing that it was for the purpose of allowing Mountbatten to make the

payments, since Mountbatten had taken over financial management of the Museum project in September 1999.

Mountbatten counters that, notwithstanding that he was in prison, the Debtor continued to be a part of the management of National Lath and so knew of the requests for the payment of salaries for "office and supervision" personnel which had been done allegedly in violation of the indemnity agreement. Moreover, Mountbatten claims that even if Debtor had no knowledge of the overhead payments, he participated in them because he faced personal liability for the salaries of the supervisory and non-labor personnel.   According to Mountbatten, the Debtor faced this personal liability because he was the sole shareholder of National Lath and claims not paid by Mountbatten could have been asserted against National Lath under NY Bus. & Corp. Law § 630, which makes a sole shareholder, such as the Debtor, personally liable for certain claims.    For these reasons, Mountbatten argues that the Debtor would have clearly benefitted personally by payments from the trust funds.

Mountbatten also contends that it is entitled to seek discovery to determine the total amount of payments, the recipients of the payments and what similar payments were made prior to September 1999 (when Mountbatten took over financial management of National Lath).  Mountbatten justifies this request by

reasoning that if there was a practice of making these payments after September 1999, such a practice must have existed prior to that time.

The general contractor on the Museum project, Morse Diesel, began making payments to National Lath as early as October 1998, disbursing approximately $350,000 by February 1999.  From March 1999, when the Debtor was first incarcerated, until September 1999, when Morse Diesel began paying Mountbatten directly, approximately another $448,000 was disbursed.

For his part, Debtor disagrees and asserts in his affidavit that he did not receive any "office and supervision" compensation while in prison, or at any time prior to his incarceration.   *See* Affidavit of Brian Kelly, annexed to Motion for Summary Judgment, ¶¶ 4 - 7.

Mountbatten alleges that Debtor's counsel refused to allow discovery prior to making the motion for summary judgment[1], and cites Fed. R. Civ. Pro. 56(f) and the relevant caselaw for the proposition that a motion for summary judgment should not be decided prior to the completion of discovery.   However, Mountbatten has not submitted an affidavit from anyone with personal knowledge of the facts, having only submitted affirmations of counsel.  The Debtor vigorously

---

[1] There is some dispute as to why discovery did not proceed at that point in time.

opposes any discovery by Mountbatten, wanting to prevent what he characterizes as a "fishing expedition," particularly considering that Mountbatten had access to the books and records of National Lath since the time when it took over financial management of the Museum Project, and again during the discovery phase of the State Court action. The Debtor argues that no evidence has been presented that indicates that any funds received by National Lath were paid to supervisory or non-labor personnel prior to the Debtor's incarceration. And even had there been any such payments, the Debtor contends, there would have been no breach of the indemnity agreement or his fiduciary duties because National Lath was current on its obligations at that time. It is the position of the Debtor that it is Mountbatten, through its agent HMS Dreadnought, which actually made the "office and supervision" payments after taking control of the financial management, and that it would be inequitable to deny his discharge for payments he did not authorize or as to which he had no knowledge.

**Plaintiff's Request for Limited Discovery is Warranted**

As a result of the simultaneous filing of Defendant's Amended Answer and the Defendant's Summary Judgment Motion, which is permissible under Fed. R. Bankr. Pro. 7056 and Fed. R. Civ. Pro. 56, Plaintiff was not given the opportunity to conduct any discovery which Plaintiff argues is necessary to respond to the

Summary Judgment Motion.    Federal Rules of Civil Procedure Rule 56(f) provides

in pertinent part that

> [s]hould it appear from the affidavits of a party opposing the motion
> that the party cannot for reasons stated present by affidavit facts
> essential to justify the party's opposition, the court may refuse the
> application for judgment or may order a continuance to permit
> affidavits to be obtained or depositions to be taken or discovery to be
> had or may make such other order as is just.

Fed. R. Civ. Pro. 56(f).[2]


Based upon the record presented as of this point, it is doubtful that

additional discovery will yield any facts that will shed light on the issues raised by

Defendant's motion.   This is especially so given the breadth of litigation in state

court that has preceded this adversary proceeding and the Plaintiff's actual

knowledge of National Lath's business affairs acquired during the period when

Mountbatten had financial control of the Museum Project.   Nonetheless, in the

interests of ensuring that the record is complete, the Court believes that limited

discovery should take place at this stage of the proceedings.  As Bankruptcy Judge

Beatty observed,

---

[2]

The Second Circuit has outlined certain pleading requirements to be set forth in an
affidavit in order for a court to grant relief under FRCP 56(f).  *See Burlington Coat Factory
Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919 (2d Cir. 1985).   Upon review of the
Affirmation of Robert J. Stone, Jr., Esq., in Opposition to Motion for Summary Judgment at
paragraphs 9 through 12, this Court finds that the factors outlined by the Second Circuit
in *Burlington* have been substantially satisfied.  Consequently, given that there has been
substantive compliance with this rule, the Court will look to the substance of the pleadings
over the form of same and waive the requirement.

> [a] "bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f). Rule 56(f) cannot be relied upon to defeat a summary judgment motion 'where the result of a continuance to obtain further information would be wholly speculative.'" *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107 (2d Cir.1981) (citations omitted); *see also Paddington*, 34 F.3d at 1138 (discovery inappropriate where party opposing discovery seeks "to find out if it has a claim, rather than that it has a claim for which it needs additional discovery"); *Waldron v. Cities Service Co.*, 361 F.2d 671, 673 (2d Cir.1966)(denying Rule 56(f) discovery where "plaintiff sought to engage in still another 'fishing expedition' in the hope that he could come up with some tenable cause of action"), aff'd. 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

*In re Rockefeller Center Properties,* 272 B.R. 524, 552 -53 (Bankr. S.D.N.Y. 2000).


Accordingly, the parties will be allowed to take discovery limited to the issues raised in connection with the Defendant's summary judgment motion, which discovery should be completed by December 31, 2006.  Thereafter, the Defendant may renew his motion for summary judgment.


## CONCLUSION

For all these reasons, the Plaintiff's request to conduct discovery is granted as set forth herein.  Further, the Court denies the Defendant's summary judgment motion without prejudice to renew following the completion of discovery.  A further pre-trial conference will take place on January 17, 2007 at 10:00 a.m. at which time the Court will hear the summary judgment motion if the

same is renewed by Defendant. In the event that no motion is made, the Court will confer with the parties to schedule dates for trial.

The clerk is directed to serve a copy of this Memorandum Decision and Order upon each of the affected parties.

IT IS SO ORDERED.

*/s/ Melanie L. Cyganowski*
Hon. Melanie L. Cyganowski, U.S.B.J.

Dated:        Central Islip, NY
              October 20, 2006